IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Southern Division

FILED
JAN 26 PM 2:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

CLIFTON SMITH, )
            )
     Plaintiff, )
            )
v.          )  CV-97-P-2380-S
            )
CITY OF BIRMINGHAM, )
            )
     Defendant. )

ENTERED
JAN 26 2000

### Opinion

Before the Court is a Motion for Summary Judgment filed by Defendant City of Birmingham on July 30, 1999. The Motion was taken under submission following an in-chambers hearing on November 22, 1999.[1] For the reasons expressed below, Defendant's Motion is due to be granted.

### I. Facts

On June 20, 1995, Plaintiff Clifton Smith was hired by the City of Birmingham as a full-time police officer. Smith was initially assigned duties as a patrolman on the 3 p.m.- 11 p.m. shift and was supervised by Chief of Police Johnnie Johnson and Captain W. M. Coppage, Commander of the East Precinct. In May of 1996, Smith was transferred to the late night/early morning shift which ran from 11 p.m. to 7 a.m.[2] After Smith transferred to this new shift, he began to experience sleep-related problems, including tardiness for his assigned shifts due to oversleeping, sleeping while on shift patrol duty, and sleeping while on duty at the East Precinct desk. As a result of personnel charges that were brought related to the above, on December 2, 1996 Smith was suspended from work for 15 days. Smith was also notified that he would be temporarily assigned to desk duty at the East Precinct on the 11-7 shift until properly examined and diagnosed by a qualified doctor in the field of sleep disorders. The next day, Dr. Joe Clements of the UAB University Hospital Sleep/Wake Disorders Center wrote a letter to Captain Coppage describing his clinical diagnosis concluding that Smith had a shift work sleep disorder which prevented him from adjusting to working the night shift.

Upon returning to work from his suspension, Smith continued to experience sleep-related

---

[1]There were three other motions by Defendant that were also considered at this hearing: (1) A Motion to Reconsider or for Clarification filed on September 30, 1999; (2) a Motion to Strike Portions of Plaintiff's Exhibit 11 filed on November 17, 1999; and (3) a Motion to Strike Expert Witness filed on November 19, 1999. In light of this Court's ruling on Defendant's Motion for Summary Judgment, these three motions are moot.

[2]There is a factual dispute as to why Smith was transferred to the late night/early morning shift. While Defendant maintains that he was transferred because of personality conflicts with other employees, Smith testified that Captain Coppage told him he was transferred because of seniority reasons.



problems which affected his police work. Furthermore, he had an on-duty traffic accident which led to his being ordered to attend remedial driver training on January 9, 1997. Smith failed to attend the January 9th session and a later make-up session because he again overslept. Later in January, Smith was transferred to the HICOPP Command and assigned to the 2 p.m. - 12 a.m. shift. After this transfer, Smith performed his duties very well and did not experience sleep-related problems while on-duty. However, on February 10, 1997, Smith failed to report as ordered to Internal Affairs to be served disciplinary paperwork for his prior misconduct. The next morning, when Sergeant Ellison phoned Smith at home and told him to appear at the office, Smith hung up on him, stating that the Sergeant could call him back when he woke up. Smith did not report to work the following day and phoned in sick. Subsequently, Sergeant Ellison drove to Smith's residence to attempt to serve him with the disciplinary papers and found Smith sitting in his car across the street from his apartment complex.

A disciplinary hearing was held by Chief Johnnie Johnson on February 18, 1999, and Smith was notified that he was terminated from the Birmingham Police Department effective February 20, 1999. Smith then appealed that action to the Jefferson County Personnel Board, which, after hearing evidence and sworn testimony from various witnesses, upheld Smith's 15-day suspension and firing.[3]

On September 4, 1997, Plaintiff instituted this action for damages based primarily upon the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. , claiming that the City of Birmingham violated the ADA by suspending him from work without pay for 15 days and later firing him based upon his alleged shift work sleep disorder. Smith also alleges that by failing to grant his requests for reassignment to a different work shift, the City denied him a reasonable accommodation for his disability. Plaintiff also brought state law claims for wrongful termination and intentional infliction of emotional distress. On July 30, 1999, Defendant filed the Motion for Summary Judgment which is the subject of this opinion.

## II.  ADA Claim

In order to state a prima facie case of discrimination based on his alleged disability, Smith must show that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as a result of his disability. *See Gordon v. E.L. Hamm & Assoc.*, 100 F.3d 907, 910 (11th Cir. 1996). The ADA defines "an individual with a disability" as one who:
- (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, or
- (2) has a record of such impairment, or
- (3) is regarded as having such an impairment.

*See* 42 U.S.C. § 12102(2).

A physical impairment alone is not necessarily a disability under the ADA. *See Hilburn v.*

---

[3] In addition to the aforementioned sleep-related problems, the Notice of Termination Hearing Memorandum indicates that Smith's personnel action also contemplated other work-related charges against the Plaintiff, including insubordination.

*Murata Electronics North America, Inc.*, 1999 WL 509829 at *5 (11th Cir. 1999). The Eleventh Circuit has looked to the EEOC regulations for guidance on determining when an impairment constitutes a disability within the meaning of the ADA. *See id.* These regulations define a "substantial limitation" as an inability to perform, or a significant restriction in the condition, manner or duration under which an individual can perform a major life activity as compared to the average person. *See* 29 C.F.R. § 1630.2(j)(1). The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." When determining whether an impairment substantially limits one of these major life activities, courts should consider the following: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *Gordon v. E.L. Hamm & Assoc.*, 100 F.3d 907, 911 (11th Cir. 1996). The Plaintiff in this case claims that due to his shift work sleep disorder, he was substantially limited in his ability to work and to care for himself.

To demonstrate that an impairment substantially limits the major life activity of "working," a plaintiff must show that he is "significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). In addition to the normal factors considered, when determining whether an impairment substantially limits a plaintiff's ability to work, courts may also consider the geographical area to which the individual has access; the job from which the individual has been disqualified because of the impairment and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area; and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, from which he is also disqualified because of the impairment. *Gordon*, 100 F.3d at 911-12.

Only one reported case has addressed the issue of whether shift work sleep disorder is a disability covered under the ADA. In a case with surprisingly similar facts to the case at bar, the United States District Court for the Western Division of North Carolina held that a police officer who sued her employer under the ADA based upon shift work sleep disorder could not maintain such a cause of action because she could not show that such an impairment would substantially limit her ability to work. *See Williams v. City of Charlotte, N.C.*, 899 F. Supp. 1484 (W.D. N.C. 1995). In so holding, the court found evidence that the plaintiff's sleep disorder would exclude her from 12.8% of jobs in the general area, including over 50% of the "protective services" jobs, was not a "significant barrier" to the plaintiff finding work. *Williams*, 899 F. Supp. at 1488. As the court recognized, "[w]hile the [EEOC] regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice." *Id.*

In *Baulos v. Roadway Express, Inc.*, 139 F.3d 1147 (7th Cir. 1998), the Seventh Circuit also held that the inability of some truck drivers to participate in their employer's "sleeper duty" driving program due to a limited sleep disorder did not substantially limit their major life activity of working. In so holding, the court focused on the fact that the plaintiffs had not offered sufficient evidence to establish a disability under the ADA because they were only unable to perform one particular job for

Case 2:97-cv-02380-CLS Document 25 Filed 01/26/00 Page 4 of 5

the employer, driving sleeper trucks. *Baulos,* 139 F.3d at 1151. Furthermore, the plaintiffs in *Baulos* offered no evidence that they would have difficulty obtaining other truck driving positions because of their inability to drive on sleeping duty. *Id.* at 1153.

Like the plaintiffs in *Williams* and *Baulos*, the Plaintiff in the present case cannot establish that his alleged sleep disorder is an impairment which substantially limits his ability to work. At the very most, Plaintiff has only demonstrated that his alleged impairment restricts his ability to perform duties as a police officer during a late night/early morning shift. Smith testified that he is capable of performing all of his police duties adequately on either the day shift or the 3 p.m. to 11 p.m. shift. His alleged inability to work as a police officer on the early morning/late night shift is not such a "significant restriction" in the ability to perform a class of jobs as to constitute a substantial limitation on the major life activity of working. *See Gordon v. E.L. Hamm & Assoc.,* 100 F.3d 907, 912 (11th Cir. 1996). In fact, nothing in the record indicates that Smith would have difficulty obtaining other "protective services" jobs due to his alleged shift work sleep disorder. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

Similarly, Plaintiff has not offered sufficient evidence to establish that his alleged impairment substantially limits his ability to care for himself. The nature of his alleged impairment is such that he is only affected by it when he works the late night/early morning shift. When working a shift other than the late shift, the evidence suggests that he is fully capable of living without posing any significant danger to himself or others. The extent, duration, and impact of Smith's alleged sleep disorder is not such that it substantially limits his ability to work or care for himself. Therefore, based upon the evidence in the record, this Court finds that reasonable persons in the exercise of impartial judgment could not conclude that Smith has a physical or mental impairment that substantially limits one or more of his major life activities. As such, the City of Birmingham is entitled to summary judgment on Plaintiff's ADA claim.

### III. IV. Wrongful Termination Claim

Plaintiff also brings a state law claim against the City of Birmingham for "wrongful termination." Yet, the Alabama Supreme Court has held that claims arising out of the employment relationship between a municipality and its employees are not contract claims because municipal employees do not serve under contract, but under law. *Whitlow v. City of Birmingham,* 689 So. 2d 107, 108 (Ala. Civ. App. 1996). The proper judicial process for challenging adverse employment decisions for municipal employees is through an appeal to the county personnel board, then to the Alabama circuit courts. *See* Alabama Code § 41-22-20. In the present case, Smith took an appeal to the Jefferson County Personnel Board and lost. He did not appeal the decision of the Personnel Board. As such, Smith is precluded from asserting such a claim in this forum, entitling the City of Birmingham to summary judgment on Count II of his Complaint.

### IV. Intentional Infliction of Emotional Distress Claim

The City of Birmingham is also entitled to summary judgment on Plaintiff's claim in Count III for intentional infliction of emotional distress. The Alabama Supreme Court has held that Alabama

Code § 11-47-190, which allows for the imposition of municipal liability, does not permit municipal liability based upon the "intentional torts" of a city's agents, officers or employees. *See Gore v. City of Hoover*, 559 So. 2d 163 (Ala. 1990). Therefore, Plaintiff's claim based upon Defendant's alleged "outrageous" conduct is due to be dismissed.

## V. Conclusion

For the reasons expressed above, Defendant City of Birmingham's Motion for Summary Judgment is due to be granted as to all of Plaintiff's claims.

Dated: January 26, 2000

Judge Sam C. Pointer, Jr.

Service List:
Ottie Clay Ackers
John M. Edens
Demetrius C. Newton